IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS HANSEN,            )
                          )
            Plaintiff,    )
                          )
       v.                 )    No.  10 C 226
                          )
CROWN GOLF PROPERTIES L.P., )
                          )
            Defendant.    )

## MEMORANDUM OPINION AND ORDER

Thomas Hansen ("Hansen") has sued his former employer, Crown Golf Properties L.P. ("Crown"), charging it with having violated the Age Discrimination in Employment Act ("ADEA," 29 U.S.C. §626). Crown has moved for summary judgment under Fed. R. Civ. P. ("Rule") 56, and the litigants have complied with this District Court's LR 56.1 (see n.3), including their full briefing of the matter.[1] For the reasons stated here, Crown's motion is granted and this action is dismissed.

**Summary Judgment Standard**

Every Rule 56 movant bears the burden of establishing[2] the absence of any genuine issue of material fact (Celotex Corp. v.

---

[1] Hansen filed an affidavit with his memorandum (cited here as "H. Mem."). On November 28, 2011 Hansen moved to substitute a longer affidavit for the original one, explaining that he had mistakenly filed a draft. That motion is granted.

[2] At the summary judgment stage, of course, Hansen need not "establish" or "show" or "prove" anything, but must merely demonstrate that a genuine issue of material fact exists. This opinion employs those terms only because the cited cases use that terminology, but it imposes on Hansen the lesser burden described earlier in this footnote.

Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (id.).

Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). What follows is a summary of the relevant facts,[3] viewed of course in the light most favorable to nonmovant Hansen.

**Factual Background**

From 2000 until late 2008 Hansen--first as an employee of a separate company called Green to Tee Golf Academy and later

---

[3] LR 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which facts are agreed upon. This opinion cites to Crown's LR 56.1 statement as "C. St. ¶--," to Hansen's LR 56.1 statement as "H. St. ¶--" and to Hansen's deposition as "H. Dep.," with the number preceding the colon designating the page and the number after the colon designating the line on that page. Where a party's response does not provide a different version of the facts than the original statement, this opinion cites only that original statement. Although Hansen has just filed a motion to strike some of Crown's responses, Crown's responses do not affect the outcome of this case, so that the motion is denied as moot.

2

through his own company--ran a program that the parties refer to as a Golf Academy ("Academy") at Willowhill Golf Club ("Willowhill") in suburban Chicago (H. Dep. 22:8-23:3, 27:18-29:19). In late 2008 Willowhill hired Crown to manage its golf operation (C. St. ¶1). Hansen's standing at Willowhill was cast into doubt with the change in management, but Crown's President David Fairman ("Fairman") hired Hansen as Director of the Academy (id. ¶¶3-4). Hansen had the highest salary of any employee at Willowhill (id. ¶5).

With the economic downturn in 2009, golf--like any leisure activity--attracted fewer participants. "Tanking worse than the U.S. economy" is how Hansen described it at his deposition (H. Dep. 62:23-63:11). Willowhill's revenues dropped, and Crown needed to cut its expenses (H. Dep. 79:4-80:18, 93:22-24, 95:6-97:12, 117:12-16).

Fairman fired Hansen in September 2009 (C. St. ¶8). Hansen later explained to a former colleague that "Crown made a business decision and...my services were no longer needed" (H. Dep. 86:20-22). Hansen also testified that at the time he was fired he was "the most expensive salaried employee on the staff. We're looking at numbers through a down year in 2009. It doesn't take a rocket scientist to understand that it's going to come down to making some more tough decisions" (H. Dep. 117:12-16). Indeed, when asked at his deposition what motivated Crown to fire him,

3

Hansen testified that he considered it to be a business decision to save costs (H. Dep. 109:19-22, 130:10-17):

> Q: Crown Golf decided to let you go as a cost-saving measure?
>
> A: I usually describe it the way Mr. Fairman described it as purely a business decision.
>
> \* \* \*
>
> Q: So, you don't know what the company based its decision to fire you on?
>
> A: I based it on what Dave [Fairman] told me, which was a business decision, and I believe I got some documentation that said it was--eliminated the position was the official [sic] from a Crown document that I don't remember. A termination document or something from Crown. It was in my personal [sic] file.

Crown did not hire a new Director for the Academy (Fairman Aff. ¶13). Instead Crown tasked two existing employees--Luke Riehle ("Riehle") and Billy Knilans ("Knilans")--to take over Hansen's duties.[4] Both Riehle and Knilans are younger than Hansen.

## Employment Discrimination under ADEA

To survive this summary judgment motion, Hansen must establish that there is a genuine issue of material fact that age was the "but-for" cause of Crown's decision to fire him (Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343, 2350-51 (2009)). Hansen

---

[4] Hansen's Complaint ¶8 stated that a single individual whom Hansen later identified as Riehle (H. Dep. 122:13-17) replaced him, but he later acknowledged that Knilans took over some of his golf teaching responsibilities (H. Dep. 123:10-124:24).

may do so using either of two approaches:[5] the direct approach, in which a plaintiff adduces direct or circumstantial evidence of the employer's discriminatory intent (Sylvester v. SOS Children's Vills. Ill., Inc., 453 F.3d 900, 902-03 (7th Cir. 2006)), or the indirect approach, which employs the sequential burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

Hansen does not offer any direct or circumstantial evidence of Crown's discriminatory intent. Hansen says that an e-mail from Fairman to his boss, David Di Paolo, shows that Crown discriminated against Hansen (H. St. Ex. E). But the e-mail actually confirms that Crown fired Hansen for business reasons:

> Based on the business results we have seen year to date, and our projected finish, the property cannot sustain a $70,000 Director position.

Hansen points to another part of the e-mail, which does mention Hansen's age but plainly says nothing at all about the reason for firing him:

> Because of his age, he has a 45 day waiting

---

[5] Those approaches originated in Title VII employment cases, but courts regularly apply them in ADEA cases as well (see, e.g., Martino v. MCI Commc'ns Servs., Inc., 574 F.3d 447, 452 (7th Cir. 2009)). Caveat: Gross, 129 S.Ct. at 2349 n.2 has recently cautioned against blindly applying Title VII precedent to ADEA cases, leaving open the possibility that the McDonnell Douglass framework does not apply to ADEA cases. Even so, because our Court of Appeals continues to apply those two approaches even after Gross (as in Martino, 574 F.3d at 452-53), this opinion also looks at both in analyzing Hansen's claims.

5

> period in which to decide and 7 days after
> signing the agreement becomes effective. We
> do not pay him during until [sic] the 7 day
> period is over.

For its part, Crown offers the affidavit of Fairman as evidence that Hansen was fired to cut expenses and not because of his age. Not only does Hansen offer no evidence to rebut that statement,[6] but in the brief deposition passages quoted earlier in the Factual Background section he himself admitted that he believed he was fired to cut costs. So the evidence points entirely to a business motive, not an age-related motive, for Crown's firing of Hansen.

Hansen says that Crown's assertion is pretextual because Crown, after firing him, assertedly gave his responsibilities to two younger employees. To establish pretext, Hansen "had to prove that {Crown's} proffered reason was a *lie*" (Leibforth v. Belvidere Nat'l Bank, 337 F.3d 931, 934 (7th Cir. 2003)(emphasis in original)). And Hansen had to present evidence that would specifically rebut Crown's stated nondiscriminatory reason for firing him (id.).

On that score it has long been recognized that replacement

---

[6] H. Mem. 7 refers to the affidavit as "fallacious." But Hansen's complaints about the affidavit amount to nitpicking over the verbiage Fairman used to describe facts. Nothing in the Affidavit is false. Hansen's lawyer ought to refrain from using such unjustifiably harsh rhetoric, which treads perilously close to violating the Rule 11(b)(4) requirement that "denials of factual contentions are warranted on the evidence."

6

by a younger employee alone--without other relevant supporting facts--is insufficient to establish pretext (La Montagne v. Am. Convenience Prods., Inc., 750 F.2d 1405, 1413 (7th Cir. 1984)). And an employer's decision in a period of economic downturn to let one employee go and to divide that employee's duties among other existing employees plainly poses a much greater hurdle for a pretext argument than a decision to hire a younger person to supplant an older employee.

More importantly, Hansen's own deposition testimony confirms that Crown tells the truth when it says it fired Hansen for economic, not age-related, reasons. In that testimony:

    1. Hansen described his termination "as a purely business decision" (H. Dep. 86:20-22, 109:19-22, 130:10-17).

    2. Hansen acknowledged that he was "the most expensive salaried employee on the staff," that revenue was down in 2009, and that "[i]t doesn't take a rocket scientist to understand that its going to come down to making some more tough decisions" (H. Dep. 117:12-16).

That testimony really confirms Hansen's own recognition that Crown's nondiscriminatory reason for firing him is truthful. He cannot manufacture a genuine issue of material fact in the face of that unequivocal deposition testimony (cf. Babrocky v. Jewel Food Co., 773 F.2d 857, 861 (7th Cir. 1985)).

Hansen also says that Crown's rationale is pretextual

7

because if Crown really wanted to cut costs it would have been better to fire Hansen in March of 2009 (H. Mem. 10). Arguments of that type have been rejected in numerous cases. Silverman v. Bd. of Educ., 637 F.3d 729, 738 (7th Cir. 2011) collects just a few of those cases, which consistently hold that it is not the court's "province to decide whether [the employer's] reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Hansen's speculation that the cost-cutting ought to have taken place earlier is not evidence of pretext.

Finally, Hansen says that because Crown identified other "inconsistent" reasons for firing Hansen and did not state that the reasons were "cumulative," all of its reasons are pretextual. That argument is frivolous. Crown's brief states a cogent and consistent story about Hansen's firing: He was the most expensive employee, and expenses needed to be cut. There's nothing inconsistent about that position.

Nor would Hansen fare any better if the analysis were to follow the alternative burden-of-production-shifting path marked out by McDonnell-Douglas, for the last step on that path is once again burden-of-persuasion proof of pretext. That is why from time to time our Court of Appeals has gone directly to the question of pretext vel non (see, e.g., Bodenstab v. County of Cook, 569 F.3d 651, 657 (7th Cir. 2009)). And here, just as what

8

has gone before has demonstrated Hansen's failure in pretext terms, so he would have to fail under the McDonnell-Douglas approach for the same reason.

Although what has been said to this point amply supports the grant of summary judgment, two more facts bear mention: Hansen was the same age when he was hired and fired, and he was hired and fired by the same Crown employee (Fairman Aff. ¶¶3-4, 9-10). Crown is thus entitled to the benefit of the so-called "same-actor inference" noted in Martino, 574 F.3d at 454-55:

> Common sense tells us that it's unlikely for a person to suddenly develop a strong bias against older folks. That's not to say it's impossible, just that the much more likely scenario involves a person harboring prejudice from the beginning, particularly when we're talking about a relatively short time frame.

Though the "same-actor" inference is not independently sufficient to dispose of Hansen's claim, "it's one more thing stacked against him" (id. at 455).

## Conclusion

With Hansen having failed to identify a genuine issue of material fact on his ADEA claim, Crown is entitled to a judgment as a matter of law on that sole claim. Its Rule 56 motion is granted, and this action is dismissed.

_____
Milton I. Shadur
Senior United States District Judge

Date: November 29, 2011